## C. N. ORDWAY et als. v. R. G. P. WHITE.

DEED OF TRUST. *Construction.* By a trust assignment of land, which authorized the assignee to sell for cash, and after paying expenses to apply the proceeds to the satisfaction of the debt secured, the grantor added: "And in the event a sale is made, I hereby waive the right of redemption given me by law, and in the event a sale is made the said grantee agrees, in consideration of the waiving of the right of redemption, to make the land bring as much as $4,000." Held, that the grantee was not bound to make the property bring that price unless he made the sale free from the equity of redemption.

### FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch. .

N. SMITHSON and J. S. WILKES for complainants.

T. M. JONES and W. H. McCALLUM for defendants.

COOPER, J., delivered the opinion of the court.

On the 21st of March, 1873, R. Harris, one of the complainants, conveyed to the defendant, R. G. P. White, a house and lot in the town of Pulaski, to secure him from loss in certain cotton transactions in which they were jointly interested. The deed provides that as soon as the cotton has been sold and the deficiency ascertained, White may sell the said house and lot for cash, after advertising according to law, and apply the proceeds, after paying the expenses

of the trust, to the satisfaction of Harris's portion of the debt; "and in the event a sale of said house and lot is made, I hereby waive the right of redemption given me by law, and in the event a sale of the house is made the said White agrees, in consideration of the waiving of the right of redemption, to make it bring as much as four thousand dollars." The deficiency provided for was afterward ascertained to be $2,524, for which Harris executed a note to White, dated July 9, 1873, at one year, with ten per cent. interest, from date until paid. On the 19th of December, 1874, Harris conveyed the same house and lot to the complainants, Ordway, Gordon & McGuire, to secure an anticipated indebtedness to them on cotton transactions, afterward found to be $4,446. This conveyance recites the execution of the previous deed to White, and authorizes Ordway, Gordon & McGuire, in the event of loss in the cotton transactions, to close this mortgage by selling, in connection with R. G. P. White, said store-house and lot for cash to the highest bidder at the court house door in the town of Pulaski, after giving the usual notice required for the sale of land, free from the equity of redemption, and apply the proceeds of said sale, first, to the payment of the debt of R. G. P. White, and all interest thereon, and the expense of executing this mortgage; second, to the payment of whatever may due to Ordway, Gordon & McGuire.

On the 12th of June, 1875, White sold the house and lot at public sale, subject to redemption, having given notice in his advertisement that he waived the

right given him to sell free from the equity of redemption. On the 9th of the same month he undertook, by instrument of writing duly acknowledged and registered, to make the same waiver. At his sale the land was ostensibly bid off by a third person, but under an arrangement with White by which he was to take the land at the bid, $2,500. In the month of September following, White went through the form of redeeming the land from the purchaser upon his mortgage debt, and advanced $500 on the bid. He executed a deed to the purchaser who quit-claimed to him. Harris seems to have been verbally notified, three days before the sale, of the waiver of White, but he did not consent to it. Ordway, Gordon & McGuire had no notice of the waiver or sale.

Harris remained in possession of the property, receiving the rents and profits, until the 1st of August, 1877, when the tenant attorned to White, and White has continued in possession. Ordway, Gordon and McGuire received information, but not from White, three months before the time for redemption had run out, that the land had been sold subject to redemption, and they never offered to redeem. They never demanded a resale, nor offered to sell it under their deed. Harris has been discharged in bankruptcy, and his assignee has done nothing in regard to the property. This bill was filed on the 20th of August, 1877, by Ordway, Gordon, McGuire and Harris against White to have a construction of the two mortgages and a declaration of the rights of the parties. It asks that White be held to have taken the land at

his sale at the price of $4,000, as agreed upon by him in his mortgage; and if not, that he be declared to have forfeited all right to the property, and it be sold in satisfaction of the debt of Ordway, Gordon & McGuire. The defendant answered the bill and the cause was heard upon the pleadings, and an agreement of facts embodying the foregoing statements. The chancellor charged White with $4,000 as of the date of the sale, but refused to make him pay interest on the surplus over his debt from that time until the filing of the bill. Both parties appealed.

The property in controversy has depreciated in value since the date of the trust conveyance, and therefore the complainants are anxious to hold White bound as the purchaser at his sale, but at the price which, they insist, he agreed that the property should bring. Of course they have the right to avoid the sale, because White was virtually the purchaser at his own sale. They prefer to validate the sale, provided they can hold him liable as upon a bid of $4,000. It is very clear that this can only be done upon the ground of contract, for whatever right of action they might have for the breach of trust in selling in the mode adopted and to himself, the damages are not shown to be the difference between the bid and $4,000, or any other sum, nor are the pleadings and proof shaped to re-cover damages. And if the property was worth no more on the day of sale than White's debt, and has since depreciated, they have suffered no damage. To charge him with the sum mentioned, they must show a contract. If the stipulation of the deed to White

had been that in consideration of the conveyance of the land for his security, he agreed to make it bring as much as $4,000, the complainant's contention would be well founded. If, on the other hand, the stipulation had been explicit, that in consideration of the waiver of the equity of redemption, he would make it bring, upon a sale for cash free from the equity of redemption, the sum in question, it would be even more clear that he would not be bound for that sum unless he made the sale upon those terms. The whole difficulty grows out of the peculiar wording of the deed, by which the meaning of the parties is left in doubt. The instrument first provides that after the debt is ascertained White may sell for cash and apply the proceeds, after paying the expenses of the trust, to the satisfaction of the debt. If the deed had stopped here, the power would have been to sell for cash subject to redemption. It adds, however, that "in the event of sale" the grantor waives the right of redemption, and repeating the words "in the event of sale," etc., White agrees in consideration of the "waiving of the right of redemption," to make the property bring as much as $4,000. Now, if the complainants be right in their construction, that White was bound to make the property bring $4,000 at any sale he might make, it can only be by making the last clause abrogate the one that precedes, and forbid any sale except a sale free from the equity of redemption. It is possible that such was the intention of the parties, but they have not said so, nor does

the language used, looking to the whole instrument, naturally admit of that construction.

The grantor has first conferred the power of sale for cash, saying nothing about redemption. Then he adds, but I am willing to waive my equity of redemption, and the grantee says, in consideration thereof, "in the event a sale of the house is made" on these terms, I will make it bring as much as $4,000. This construction leaves every part of the instrument in full force, and explains the repetition of the words "in the event a sale of the house is made," in the last clause. They are pure surplusage, and a blot on the whole sentence, unless the draftsman intended to say, after the grantor had waived the right of redemption, "that in the event of a sale" free from redemption, White's agreement, in consideration thereof, was to take effect. White does not agree, in consideration of the conveyance, or in any event, to make the property bring so much, but only if the sale be made free from the equity of redemption, in consideration of the waiver. The power to sell subject to redemption first given was never intended to be taken away. This view is greatly strengthened by the terms of the second mortgage, which subordinates the rights of the grantees to those of White under his deed.

The complainants may elect to set the sale aside and have a resale, under the two deeds, free from redemption, for cash or upon time. The defendant will, in that event, be charged with the rent of the property since he has been in possession, less taxes and reasonable repairs, and be first paid his debt, with

interest, out of these rents and the proceeds of sale. If the complainants make this election, inasmuch as they had the opportunity to redeem the property at less than the first mortgage debt, they will pay all the costs incident to this election, if the property and rents fall short of paying defendant's debt, otherwise, such costs will be paid out of the fund. If the complainants elect to allow the original sale to stand, the title of the defendant will be validated by the decree. In either event the defendant will pay all the costs of the cause to this date.

Reverse the decree below, and enter a decree here in accordance with this opinion.